IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

AMANDA MARTIN, JANET           :
BRUCE, TIFFANY EPPS, and       :
SUSAN EPPS,                     :
                                :
        Plaintiffs,             :
                                :         CIVIL ACTION
v.                              :         NO. 2:10-CV-0082-WCO
                                :
HUDDLE HOUSE, INC.,            :
                                :
        Defendant.              :

## ORDER

The captioned case is before the court for consideration of the parties' "Joint Motion for Approval of Settlement Agreements as Stipulated Final Judgement" [8].

### I.      Factual and Procedural Background

On May 3, 2010, this case was removed from the Fulton County Superior Court pursuant to 28 U.S.C. § 1441(b). The complaint alleged various violations of the Fair Labor Standards Act (hereinafter "FLSA") and common law unjust enrichment claims. There was little activity until the parties filed their joint settlement agreement with the court on December 15, 2010. The court held a hearing with counsel on January 6, 2011, with participation of plaintiffs' attorney by telephone.

The settlement agreement is actually in the form of four separate agreements, one for each plaintiff. In these agreements, defendant does not admit any liability.

Each agreement provides for an award of damages to the individual plaintiff and also for an amount of attorney's fees and expenses to be paid directly to plaintiffs' attorney, Penn Dodson.  The terms of the individual agreements are as follows: (1) Tiffany Epps would receive a total of $1,500.00 in damages and her attorney would receive $2,125.00 for litigation expenses, costs, and attorney's fees; (2) Susan Epps would receive a total of $1,500.00 in damages and her attorney would receive $2,125.00 for litigation expenses, costs and attorney's fees; (3) Amanda Martin would receive a total of $1,500.00 in damages and her attorney would receive $2,125.00 for litigation expenses, costs, and attorney's fees; and (4) Janet Bruce would receive a total of $2,000.00 in damages and her attorney would receive $2,125.00 for litigation expenses, costs, and attorney's fees.  Thus, in total, plaintiffs would receive $6,500.00 and plaintiffs' attorney would receive $8,500.00.

During the hearing, the court questioned counsel for both parties about the terms of the settlement agreement and the negotiation process that led to the agreement.  After some confusion, both parties represented to the court that the damages award and the attorney's fee award in the settlement agreement were negotiated simultaneously, albeit separately.  Both parties also made clear that they did not finalize the amount of the damages award before they began discussing the amount of the attorney's fee award.  Additionally, plaintiffs' attorney represented that

she had invested over $20,000.00 worth of time in this matter.  She did not, however,

provide any information regarding the number of hours worked or her typical hourly

rates.  *Cf. Rastellini v. Amy Charles, Inc.,* No. 6:08-CV-255-ORL-28GJK, 2009 WL

2579316, at *3 (M.D. Fla. Aug. 17, 2009) (requiring plaintiff's attorney, seeking

approval of FLSA settlement, to file sworn statements providing detailed records of

time spent, hourly rates, and the precise work performed by each person who worked

on the case).

## II.    Legal Analysis

When employees bring a private action for back wages under the FLSA and

present a proposed settlement agreement to the district court, "the district court may

enter a stipulated judgment after scrutinizing the settlement for fairness."  *Lynn's

Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1353 (11th Cir.

1982).  Part of this reasonableness review may involve some scrutiny of the amount

of fees to be paid to plaintiff's counsel.   "FLSA requires judicial review of the

reasonableness of counsel's legal fees to assure both that counsel is compensated

adequately and that no conflict of interest taints the amount the wronged employee

recovers under a settlement agreement."  *Silva v. Miller*, 307 F. App'x 349, 351 (11th

Cir. 2009).[1]  One popular method used by district courts to gauge the reasonableness of an attorney's fee, both in this circuit and other circuits, is the "lodestar method." *See, e.g., Comstock v. Fla. Metal Recycling, LLC,* No. 08-81190-CIV, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009); *Prater v. Commerce Equities Mgmt. Co.,* No. H-07-2349, 2008 WL 5140045, at *3 (S.D. Tex. Dec. 8, 2008).

The precise issue that concerns the court in this matter is the fact that plaintiffs' attorney simultaneously negotiated both a damages award and an attorney's fee award. Rather than first negotiating an amount to be paid to each plaintiff in this action, plaintiffs' attorney instead simultaneously negotiated her fee and the award to each plaintiff.  This creates an inherent conflict of interest, because every dollar that is allocated to pay attorney's fees becomes a dollar that will not be paid to plaintiffs as damages.

---

[1] The court notes some divergence of opinion over the circumstances under which such scrutiny is appropriate. *Cf. Bonetti v. Embarq Man. Co.*, 715 F. Supp. 2d 1222, 1227-28 (M.D. Fla. 2009) (opining that scrutiny of attorney's fee in the absence of an objective basis to do so is "wrong-headed" and does not give adequate deference to compromise reached by the parties) *with Shannon v. Saab Training USA, LLC*, No.6:08-CV-803-ORL-19DAB, 2009 WL 1773808, at *5-7 (M.D. Fla. June 23, 2009) (thoroughly scrutinizing reasonableness of attorney's fee award even though there was no suggestion that the attorney's fee award and the damages award had been negotiated simultaneously).  The court does not need to interject itself into this dispute because here it addresses a situation where courts agree scrutiny is warranted, namely where a plaintiff's attorney negotiated a damages award and an attorney's fee award simultaneously, rather than separately. *See Bonetti*, 715 F. Supp. 2d at 1228 (indicating that if the fee of the plaintiff's attorney was not negotiated separately and without regard to the amount paid to the plaintiff, then the court should consider the reasonableness of the fee and examine the potential conflict of interest).

A number of district courts in this circuit have noted that potential conflicts of interest may arise in the settlement of FLSA claims. In *Petrov v. Cognoscenti Health Inst.*, *LLC*, No 6:09-CV-1918-ORL-22GJK, 2010 WL 557062, at *3 (M.D. Fla. Feb. 12, 2010),[2] the court stated that "a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorneys' fees and costs" in a FLSA settlement. The Supreme Court has also previously raised, without deciding, the question of the propriety of the simultaneous negotiation of damages and attorney's fees. *White v. New Hampshire Dept. of Emp't Sec.*, 455 U.S. 445, 453 n.15 (1982). The Court opined that "such situations may raise difficult ethical issues for a plaintiff's attorney." *Id.* However, the Court did not provide specific guidance about how to handle such a situation, indicating only that "we are reluctant to hold that no resolution is ever available to ethical counsel." *Id.*

District courts in this circuit have indicated that if attorney's fees are negotiated simultaneously with a damages award in a FLSA settlement, this should trigger increased scrutiny of the reasonableness of the settlement. In *Bonetti*, 715 F. Supp.

---

[2] The fact that the vast majority of the opinions relied upon in this order come from the Middle District of Florida is not a coincidence. Over the last several years, the Middle District of Florida has handled a very large number of FLSA cases. Indeed, there were nearly 2,500 FLSA cases filed in that court between 2007 and 2008, and about 20% of all civil cases pending in that district are FLSA lawsuits. *Bonetti*, 715 F. Supp. 2d at 1225; *see also id.* (noting that "[a] Westlaw and LexisNexis search of FLSA case law reveals that a surprisingly large number of the published and unpublished district court decisions regarding the FLSA originate in [the Middle District of Florida]").

2d at 1228, the court indicated that there was no need to independently scrutinize the reasonableness of attorney's fees provided in a FLSA settlement if and only if "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff . . .".  Additionally, in *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1347 (M.D. Fla. 2010), the court noted that a fee appeared reasonable when "the parties negotiated [the attorney's fee amount] separately and without regard to the amount paid to the plaintiff."  Thus, although neither of these cases addressed a factual situation where a plaintiff's attorney had in fact negotiated a damages award and a fee award simultaneously, they do indicate that such a situation should be handled with added scrutiny.

Concern over the simultaneous negotiation of attorney's fees and a damages award is also shared by the courts of other federal circuits.  The case of *Cisek v. National Surface Cleaning, Inc.*, 954 F. Supp. 110, 110 (S.D.N.Y. 1997) noted the precise conflict of interest at issue here.  *Cisek* involved an action under the FLSA to recover for non-payment of overtime wages.  A settlement agreement between the parties was submitted to the court for approval.  The agreement provided for a damages award of $10,002.20 to plaintiffs and an attorneys' fee award of $13,943.47.

The court noted that "[t]he troublesome aspect of this [settlement] application is that the amounts to be paid to the attorneys and to the plaintiffs themselves appear

to have been negotiated together." *Id.* This indicated that "[p]laintiffs' counsel therefore had an inherent conflict of interest in that they reasonably should have perceived that every dollar the defendants agreed to pay them was a dollar that defendants would not pay to the plaintiffs." *Id.* The court examined the effect that this simultaneous negotiation had on "the propriety and amount of any fee award." *Id.* The settlement agreement was eventually approved because the court found that "the sum sought by plaintiffs' counsel [was] reasonable and that the settlement was untainted by conflict of interest." *Id.* at 111.

The settlement in this case also causes concern to the court for another reason. In addition to its duty to assess the reasonableness of any FLSA settlement, "a District Court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Sanders v. Russell*, 401 F.2d 241, 246 (5th Cir. 1968)).[3] Federal district courts possess "the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Kleiner v. First Nat'l. Bank*, 751 F.2d 1193, 1209 (11th Cir. 1985) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980)). This inherent power "necessarily includes the

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, constitute binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Id.* (quoting *Flaska v. Little River Constr. Co.*, 389 F.2d 885, 888 (5th Cir. 1968)).

"[F]ederal district courts have clear statutory authority to promulgate rules governing the admission and conduct of the attorneys who practice before them." *Greer's Refuse Serv., Inc. v. Browning-Ferris Indus.*, 843 F.2d 443, 446 (11th Cir. 1988). The rules adopted by this court specify that "[a]ll lawyers practicing before this court shall be governed by and shall comply . . . with the Georgia Rules of Professional Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of this court interpreting these rules and standards." LR 83.1(C), NDGa. Due to its independent concerns about the propriety of the conduct of plaintiffs' attorney, the court will briefly inquire into whether that conduct was ethically appropriate.

There is no section of the Georgia Rules of Professional Conduct that directly addresses the present situation. Rule 1.7, which deals with attorney conflicts of interest, states that "[a] lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests . . . will materially and adversely affect the representation of the client . . . ". Comment 4 to Rule 1.7 provides that a lawyer's "[l]oyalty to a client is also impaired when a lawyer cannot

consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests."  Similarly, Comment 6 to Rule 1.7 advises that a "lawyer's personal or economic interests should not be permitted to have an adverse effect on representation of a client."

Applying these authorities to the case at hand, the court comes to the following conclusions.  First, the proposed settlement agreement cannot be approved at this time. The facts clearly show that plaintiffs' attorney simultaneously negotiated a damages award for her clients and her own fee award.  The court has an obligation to ensure the fairness of any FLSA settlement, and scrutinizing the reasonableness of any attorney's fees included in that settlement is particularly important when those fees were not negotiated separately from the damages award.  In such a situation, this court agrees with many other courts that an attorney is faced with an inherent conflict of interest. *See, e.g., Petrov*, 2010 WL 557062 at *3; *Cisek,* 954 F. Supp. at 110.

The conflict of interest is clear:  an attorney owes a duty of loyalty to his or her client.  In the settlement context, this obligates an attorney to seek the most favorable terms for his or her client.  Conversely, when an attorney negotiates for his or her fees, that attorney has a financial interest in the eventual amount of fees awarded.  When a client's damages award and an attorney's fee award are negotiated simultaneously,

an attorney's obligation to obtain the best possible settlement for the client conflicts with that attorney's personal financial interest in obtaining a favorable fee award.

The fact that the parties in this matter claim that the damages award and the attorney's fee award were negotiated separately does not change this analysis. The court believes that it would be nearly impossible to keep any simultaneous negotiation of damages and attorney's fees completely separate. From defendant's perspective, the two amounts are inextricably linked. Defendant's primary concern is its total settlement liability, which is the sum of the damages award and the attorney's fees, rather than the division of this amount between plaintiffs and their attorney. Similarly, it is unrealistic to assume without further investigation that plaintiffs' attorney was able to fairly balance the conflicting financial interests involved.

Additionally, as noted previously, this court has an independent interest in ensuring that the attorneys practicing before it comport themselves in accordance with accepted ethical standards. The facts in this case plainly demonstrate that the financial interest of plaintiffs' attorney may have had an adverse effect on her representation of plaintiffs. At the very least, the conflict likely created a "significant" risk that the interest of plaintiffs' attorney would conflict with those of her clients. Thus, a hearing is also necessary so that the court can decide how to address this potential ethical violation.

For the foregoing reasons, the parties' "Joint Motion for Approval of Settlement Agreements as Stipulated Final Judgement" [8] is hereby **DENIED** at this time.  The parties and their respective attorneys are hereby **ORDERED** and **DIRECTED** to appear in the Third Floor Courtroom of the United States Courthouse, 121 Spring St., S.E., Gainesville, Georgia, on Monday, February 28, 2011, at 11:00 a.m.

**IT IS SO ORDERED**, this 11th day of February, 2011.


s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge